NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0660n.06

No. 12-1513

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*Jul 17, 2013*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | **)** | |
| | **)** | |
| Plaintiff-Appellee, | **)** | |
| | **)** | |
| v. | **)** | |
| | **)** | ON APPEAL FROM THE |
| MICHAEL VANDERWAL, | **)** | UNITED STATES DISTRICT |
| | **)** | COURT FOR THE WESTERN |
| Defendant-Appellant. | **)** | DISTRICT OF MICHIGAN |
| | **)** | |

Before: MARTIN and COOK, Circuit Judges; GRAHAM, District Judge.[*]

**GRAHAM, District Judge.** Defendant Michael A. Vanderwal appeals the denial of his motion for judgment of acquittal on charges of attempted sexual exploitation of children pursuant to 18 U.S.C. § 2251(e). Vanderwal argues that the evidence presented by the Government was insufficient to demonstrate that the videos he created constituted sexual exploitation, and that those videos could not form the basis of his conviction for attempted sexual exploitation of children.

---

[*] The Honorable James L. Graham, United States District Judge for the Southern District of Ohio, sitting by designation.

1

I.

Defendant/Appellant Michael Vanderwal's criminal prosecution began following a raid of an Ohio-based company involved in the trade of child pornography. Postal inspectors identified his address in the company's records. They then contacted Vanderwal by mail and offered him the opportunity to purchase child pornography. He accepted the opportunity and requested four named DVDs. The Postal Inspection Service subsequently obtained and executed a warrant on Vanderwal's home on December 7, 2010. The search revealed 914 videos and 5,342 still images depicting child pornography.

Most relevant to this appeal, the search team discovered a VHS tape in Vanderwal's living room. The tape depicted two episodes of pre-pubescent girls, M.B. and C.B., naked in Mr. Vanderwal's bathroom. It is apparent from the videos that they were secretly made by placing a camera in the bathroom. The two girls in the videos are the daughters of a family friend. The girls' mother had met Vanderwal when she was twelve and he was her science teacher. Since then, she and Vanderwal became and remained close friends. Vanderwal was a frequent babysitter for the two girls in the videos, and they referred to him as their grandfather. In addition to the videotape, postal inspectors found a suitcase containing sex toys, child pornography, and a seven-page story apparently authored by Vanderwal and illustrated with child pornography. They also found a plastic bag containing girls underwear.

On July 14, 2011, the United States filed a five-count indictment against Vanderwal. Counts 1 and 2 alleged violations of 18 U.S.C. § 2251 for attempted sexual exploitation of children, based on the videos of M.B. and C.B.; Counts 3 and 4 alleged unlawful receipt of child pornography in

violation of 18 U.S.C. § 2252A; and Count 5 alleged possession of child pornography in violation of 18 U.S.C. § 2252A. On October 31 and November 1, 2011, the Western District of Michigan held a jury trial on all five counts.

At the close of the Government's case, Vanderwal moved for judgment of acquittal on each of the first four counts–those related to attempted sexual exploitation and receipt of child pornography. *See* FED. R. CRIM. PRO. 29(a). In support of this motion, Vanderwal's attorney argued that there was insufficient evidence to satisfy the elements of attempted sexual exploitation of a minor. He argued that though the videos "show private conduct in the bathroom, . . . that does not equate with sexual conduct, and I believe that the proofs have failed on Counts 1 and 2 to meet the required elements of sexual exploitation of a child to produce sexually explicit images." In addition to the argument that Vanderwal did not create any sexually explicit materials, Vanderwal's attorney argued that there was no evidence that Vanderwal attempted to create a recording that was more lascivious than the video that he did, in fact, create. The Government, he argued, had "not shown any evidence . . . that [Vanderwal] was going to finish that crime and exploit those children to make any type of image, especially in the time frame that they've indicated." The district court disagreed and held that given the context in which the videos were discovered, there was adequate evidence that Vanderwal attempted to sexually exploit M.B. and C.B:

> [T]his particular video cannot be taken in a vacuum. . . . . What we have in that house . . . simultaneous with finding this video was the finding of a large amount, thousands of images, apparently, of little children in various states of sexual use and abuse by adults, and some just on their own without the adults, just children themselves in obviously lascivious poses; that is, sexual poses for young children.
> This video is then taken in the context of a house with many other matters, including sexual toy objects as well. So the establishment of lasciviousness can

3

clearly be made circumstantially, potentially, by a juror beyond a reasonable doubt taken in the context of the contents of this house.

. . .

[The girls' actions on the videos are] not lascivious from the girls' standpoint. We're not looking at it from their standpoint. We're looking at it from the standpoint of the person who is viewing the video. And that person viewing the video was obviously the person that placed surreptitiously the camera, maybe knowingly, but I don't think so, surreptitiously in the position of taking this recording, and that same person then who did that would obviously have access to the house. And in that house is where what clearly appears to be lascivious sexual conduct of little children has been recorded in many still and many video pictures.

So therefore, the Court believes that that should be denied on the first two counts. There is sufficient evidence to go to the jury on the question of it being pornography from the standpoint of sexually explicit conduct in visual depictions of young children.

Trial Transcript at 238-239.

Following the denial of his motion for acquittal, Vanderwal declined to present evidence and the case was submitted to the jury. The jury found Vanderwal guilty of all charges. The court calculated a sentencing guidelines range of 360 months to life imprisonment and sentenced him to the bottom end of that range. Vanderwal does not appeal his sentence, only whether the district court erred by denying his motion for judgment of acquittal on counts 1 and 2 for attempted sexual exploitation of a child.

## II.

We review the legal issue of whether the district court properly denied a Rule 29 motion for judgment of acquittal *de novo*. Under this standard, the Court "must view the evidence and all reasonable inferences in the light most favorable to the government." *United States v. Gibson*, 675 F.2d 825, 829 (6th Cir. 1982). "A motion for a judgment of acquittal must be granted if 'there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt.'"

4

*U.S. v. Fawaz*, 881 F.2d 259, 261 (6th Cir. 1989) (quoting *Curley v. United States*, 160 F.2d 229, 232-33 (D.C. Cir. 1947)); *see also U.S. v. Acierno*, 579 F.3d 694, 698 (6th Cir. 2009).

III.

18 U.S.C. § 2251 criminalizes the creation of any "visual depiction" of a minor engaged in "any sexually explicit conduct." 18 U.S.C. § 2256(2)(A) defines "sexually explicit conduct" as "(i) sexual intercourse . . . ; (ii) bestiality; (iii) masturbation; (iv) sadistic or masochistic abuse; or (v) lascivious exhibition of the genitals or pubic area of any person." Only the last category is at issue here. The Sixth Circuit has adopted a six-part test, originally announced in *United States v. Dost*, 636 F.Supp. 828, 832 (S.D. Cal. 1986), for determining of whether a given image or video is "lascivious":

> 1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;
> 2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;
> 3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;
> 4) whether the child is fully or partially clothed, or nude;
> 5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;
> 6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

*United States v. Brown*, 579 F.3d 672, 680 (6th Cir. 2009) (quoting Dost, 636 F.Supp. at 832); *see also United States v. Daniels*, 653 F.3d 399, 407 (6th Cir. 2011). "In applying [the] Dost [factors] . . . we have noted that 'this list is not exhaustive, and an image need not satisfy every factor to be deemed lascivious.'" *Brown*, 579 F.3d at 680 (quoting *United States v. Campbell*, 81 Fed. Appx. 532, 536 (6th Cir. 2003).

Vanderwal argues that the videos of M.B. and C.B. are not lascivious, and that the district court erred by considering contextual evidence of the sixth *Dost* factor. He argues that evidence is insufficient to meet the first, second, fifth, or sixth Dost factors. Though Vanderwal argues that the videos he created do not satisfy the Dost test, this argument, if true, would not entitle him to relief. As the Government correctly notes, Vanderwal was not convicted of sexual exploitation of a minor (by creating videos that satisfy the Dost test,) but of attempted sexual exploitation of a minor. "To convict [a defendant] of attempted production of child pornography, the government must show two things beyond a reasonable doubt: first, that [the defendant] specifically intended to create child pornography . . . ; and second, that he took a substantial step towards the creation of child pornography." *United States v. Sims*, 708 F.3d 832, 835 (6th Cir. 2013); *see also United States v. Bilderbeck*, 163 F.3d 971, 975 (6th Cir. 1999) (for an attempt crime, "the government must demonstrate a defendant's intent to commit the proscribed criminal conduct together with the commission of an overt act that constitutes a substantial step towards commission of the proscribed criminal activity."). It is not necessary for the Government to prove that the videos Vanderwal created were lascivious, only that he had the specific intent to create a lascivious video. *Sims*, 708 F.3d at 835 ("[T]he government does not need to prove that the videos . . . were actually lascivious. (If they were, [defendant] would presumably be facing an actual-production charge.) To say that a defendant must take a substantial step towards committing an offense does not mean that he must actually commit the offense.").

Confronted with the fact that the Government need not demonstrate that Vanderwal created a sexually explicit, lascivious image in order to prove an attempt crime, Vanderwal argues that a

6

specific intent to create child pornography cannot be demonstrated unless the image actually produced is lascivious. This circular logic ignores the fact that the jury verdict necessarily found that he tried and failed to create a video that was lascivious. His argument that he failed at that endeavor is not relevant to the attempt crime. It is sufficient that the jury found that he had the requisite specific intent and took a substantial step.

Next, Vanderwal argues that there is no evidence that he attempted to make a video that was any more lascivious than the videos that he successfully created. He specifically points to the absence of evidence that he induced M.B. and C.B. to engage in any sexually explicit conduct. Without such inducement, Vanderwal argues that there is insufficient evidence that he attempted to make a lascivious video. The Government argues that Vanderwal's intent to sexually exploit M.B. and C.B. is supported by Vanderwal's collection of child pornography; the sexual fantasy story that he wrote about a grandfather and granddaughter in a sexual relationship; and "the way he aligned the hidden video camera in the bathroom to focus on the genital area of someone standing at the sink, and the fact that the shower curtain had a clear plastic curtain in the video, allowing the camera to capture the children with the curtain drawn." Indeed, a broad range of contextual facts–"the defendant's objective conduct, taken as a whole"–may be used to prove intent. *United States v. Pennell*, 737 F.2d 521, 525 (6th Cir. 1984); *see also United States v. Levit*, 39 Fed. App'x 97, 104 (6th Cir. 2002) ("Because attempt crimes are inchoate offenses, both the mens rea and actus reus requirements may be satisfied by looking to the entire range of a defendant's conduct, legal and otherwise."). In *Sims*, this Court found that evidence of possession of child pornography was probative of the defendant's intent in secretly videoing a child changing from outside of a bedroom

window. 708 F.3d at 836 (remanding the case for the district court to balance the probative weight and the prejudicial effect of the evidence in considering whether it was admissible). Similarly, in this case, the contextual evidence discussed above is sufficient to support a jury's determination that Vanderwal attempted to sexually exploit the girls.

Vanderwal's argument that only facts related to the actual videos and the circumstances of their production may be used to demonstrate his intent lacks merit. He argues that limitations in the Dost test should be applied to the analysis of intent in inchoate crimes. "In cases involving the issue of child pornography, the law of this Circuit clearly states that the District Court must exclude other evidence of the defendant's collection of unrelated child pornography. *United States v. Brown*, 579 F.3d 672, 681-82 (6th Cir. 2009)." (Reply Brief at 13.) *Brown* did not involve an attempt to create child pornography, but instead focused on the application of the *Dost* factors to images created by the defendant. 579 F.3d at 681. These are distinct inquiries, one focuses on a defendant's state of mind when taking action towards a crime that is not consummated, the other is an analysis of whether a given image or video is lascivious. That other child pornography possessed by the defendant is not relevant to determining the lasciviousness of an image created by a defendant, does not mean it is not relevant to his intent in creating that image. *Sims* makes it clear that broad contextual evidence may be both relevant and admissible to prove a defendant's intent in creating an image. 708 F.3d at 836.

Finally, it is worth noting that this appeal involves only whether the evidence was sufficient to justify the district court's denial of Vanderwal's motion for judgment of acquittal and the scope of evidence that may be considered in ruling on such a motion. This case does not implicate the

admissibility of contextual evidence. Vanderwal argues that other images from his collection of child pornography should not have been admitted in his trial for attempted exploitation of children because they were not relevant to his intent in creating the videos. Vanderwal did not raise this argument before the district court and has not preserved it for review, and in any event, as discussed above, these images were relevant to Vanderwal's intent in creating the videos. *See Sims*, 708 F.3d at 836.

## IV.

For the reasons stated above, we AFFIRM the district court's denial of Vanderwal's motion for judgment of acquittal.