*United States v. McIntosh*

In the

# United States Court of Appeals

## For the Second Circuit

————

August Term 2020

Argued: October 15, 2020
Decided: January 31, 2022
Amended: January 25, 2023

Nos. 14-1908, 14-3922, 17-2623

United States of America,
*Appellee-Cross-Appellant*,

*v.*

Louis McIntosh, AKA Lou D, AKA Lou Diamond, AKA G,
*Defendant-Appellant-Cross-Appellee*,

Edward Ramirez, AKA Taz, Terrence Duhaney, AKA Bounty
Killer, Turhan Jessamy, AKA Vay, Quincy Williams, AKA
Capone, Tyrell Rock, AKA Smurf, Neil Morgan, AKA Steely,
*Defendants.*

————

Appeal from the United States District Court
for the Southern District of New York.

————

Before:  WALKER, LOHIER, *Circuit Judges,* and STANCEU, *Judge.*[*]

————————

Louis McIntosh appeals various issues arising from his 2017 amended judgment of conviction for Hobbs Act robbery and firearm offenses in the Southern District of New York (Sidney H. Stein, *J.*).  In this opinion, we address two of McIntosh's arguments—first, that the order of forfeiture entered against him should be vacated because the district court failed to enter a preliminary order prior to sentencing, as required by Federal Rule of Criminal Procedure 32.2(b)(2)(B); second, that he was improperly convicted of possessing firearms as a felon, Counts Twelve through Fourteen, because the government did not prove that he knew that he was a felon.  As to these issues, we **AFFIRM** the judgment of the district court.  We address his remaining arguments in a separate summary order filed concurrently with this opinion.

————————

> STEVEN YUROWITZ, Newman & Greenberg LLP, New York, NY, *for Defendant-Appellant-Cross-Appellee Louis McIntosh.*
>
> SARAH KRISSOFF, Assistant United States Attorney (Thomas McKay, Assistant United States Attorney, *on the brief*), *for* Geoffrey S. Berman, United States Attorney for the Southern District of New York, New York, NY, *for Appellee-Cross-Appellant United States of America.*

————————

---

[*] Senior Judge Timothy C. Stanceu, of the United States Court of International Trade, sitting by designation.

JOHN M. WALKER, JR., *Circuit Judge*:

Louis McIntosh appeals various issues arising from his 2017 amended judgment of conviction for Hobbs Act robbery and firearm offenses in the Southern District of New York (Sidney H. Stein, *J.*).[1] In this opinion, we address two of McIntosh's arguments—first, that the order of forfeiture entered against him should be vacated because the district court failed to enter a preliminary order prior to sentencing, as required by Federal Rule of Criminal Procedure 32.2(b)(2)(B); second, that he was improperly convicted of possessing firearms as a felon, Counts Twelve through Fourteen, because the government did not prove that he knew that he was a felon. As to these issues, we **AFFIRM** the judgment of the district court. We address his remaining arguments in a separate summary order filed concurrently with this opinion.

## BACKGROUND

In 2011, Appellant Louis McIntosh and several others were indicted on multiple counts of Hobbs Act robbery and related firearms charges. The charges arose from a series of violent robberies and attempted robberies that occurred between 2009 and 2011. The

---

[1] This opinion was originally filed on January 31, 2022, with a concurrently filed summary order. *See United States v. McIntosh*, 24 F.4th 857 (2d Cir. 2022); *United States v. McIntosh*, No. 14-1908, 2022 WL 274225 (2d Cir. Jan. 31, 2022). On July 26, 2022, McIntosh filed a petition for a writ of certiorari with the Supreme Court. On November 7, 2022, the Supreme Court granted McIntosh's petition for a writ of certiorari, vacated our judgment, and remanded the case for further consideration in light of *United States v. Taylor*, 142 S. Ct. 2015 (2022), which held that attempted Hobbs Act robbery is not a crime of violence under 18 U.S.C. § 924(c). *See McIntosh v. United States*, 143 S. Ct. 399 (2022). Because *United States v. Taylor* does not affect the analysis in this opinion, we now reissue it, with only minor non-substantive changes.

indictment contained a forfeiture allegation, consistent with 18 U.S.C. § 98l(a)(1)(C) and 28 U.S.C. § 2461(c), requiring the forfeiture of all proceeds and property resulting from the offenses.

In August 2013, a jury in the Southern District of New York convicted McIntosh on all counts.[2] The district court sentenced McIntosh to 720 months' imprisonment and three years of supervised release. The district court also ordered McIntosh to pay restitution and to forfeit $75,000 and a BMW that McIntosh had purchased with robbery proceeds.

Before imposing forfeiture, Federal Rule of Criminal Procedure 32.2(b) requires the district court to "promptly enter a preliminary order of forfeiture setting forth the amount of any money judgment . . . [and] directing the forfeiture of specific property."[3] "Unless doing so is impractical," this preliminary order "must" be entered "sufficiently in advance of sentencing to allow the parties to suggest revisions or modifications before the order becomes final."[4] The preliminary order becomes final at sentencing and must be included in the judgment.[5]

In this case, the district court did not enter a preliminary order prior to sentencing, apparently because the government did not submit a proposed order. At sentencing, after verbally ordering forfeiture, the district court instructed the government to propose a

---

[2] After jury deliberations, the district court directed a judgment of acquittal on two counts. The district court's order as to those counts has no bearing on the issues discussed in this opinion.

[3] Fed. R. Crim. P. 32.2(b)(2)(A).

[4] Fed. R. Crim. P. 32.2(b)(2)(B).

[5] Fed. R. Crim. P. 32.2(b)(4)(A)-(B).

formal order of forfeiture within one week, which the government also failed to do. As a result, no written order of forfeiture was entered.

After the entry of judgment, McIntosh timely appealed. In 2016, on the government's unopposed motion, we remanded the case pursuant to *United States v. Jacobson*[6] and instructed the government, if it wished to pursue forfeiture, to ask the district court to enter a formal order of forfeiture. The government then filed a proposed order, and McIntosh raised several challenges in response.

On August 8, 2017, the district court denied McIntosh's objections and entered a preliminary order for forfeiture. The order required McIntosh to pay $75,000 in forfeiture and to turn over the BMW, with funds from the sale of the car being credited against the $75,000.[7] The order was included in an amended judgment filed the same day. McIntosh timely appealed the amended judgment.

## DISCUSSION

### I

On appeal, McIntosh challenges the forfeiture order, which he says should be vacated because the district court failed to enter a preliminary forfeiture order before sentencing, as required by Federal Rule of Criminal Procedure 32.2(b)(2)(B). We disagree.

Nothing in the federal rules sets forth the consequences of a failure by the district court to issue the preliminary order prior to sentencing. We find the Supreme Court's decision in *Dolan v. United*

---

[6] 15 F.3d 19 (2d Cir. 1994).

[7] In our accompanying summary order, we vacate the $75,000 forfeiture on other grounds and remand the case to the district court for recalculation.

*States*, however, to be instructive.[8]   There, in a restitution case, the Supreme Court laid out a framework for analyzing "the consequences of [a] missed deadline" when not specified in the relevant statute.[9] The Court described three kinds of deadlines: "jurisdictional rules" that present an absolute prohibition; "claims-processing rules" that can bar certain actions but also may be waived; and "time-related directives" that are "legally enforceable but [do] not deprive a judge or other public official of the power to take the action to which the deadline applies if the deadline is missed."[10]

The *Dolan* Court concluded that a 90-day statutory deadline to order restitution was a time-related directive.  The Court considered a number of relevant circumstances.  It stated that when "a statute does not specify a consequence for noncompliance with its timing provisions, federal courts will not in the ordinary course impose their own coercive sanction."[11]  It examined the text and structure of the statute and determined that the deadline "is primarily designed to help victims of crime secure prompt restitution rather than to provide defendants with certainty as to the amount of their liability."[12]  The Court was mindful that preventing restitution would harm victims, "who likely bear no responsibility for the deadline's being missed and whom the statute also seeks to benefit."[13]  This suggested that the deadline is not meant to be a firm prohibition.  The Court also cited

---

[8] 560 U.S. 605 (2010).

[9] *Id.* at 610.

[10] *Id.* at 610-11.

[11] *Id.* at 611 (internal quotation marks omitted).

[12] *Id.* at 613.

[13] *Id.* at 613-14.

other cases in which deadlines were interpreted flexibly in order to preserve their purpose or to avoid disproportionally benefiting convicted defendants.[14]  Finally, it noted that defendants who wished to avoid delay were always free to remind the district court of the statutory deadline.[15]  Taken together, these circumstances led the Supreme Court to conclude that the restitution deadline is a time-related directive.  As a result, so long as the district court makes clear prior to the deadline expiring that it intends to impose restitution, "a sentencing court that misses the 90-day deadline nonetheless retains the power to order restitution."[16]

We think the considerations that pertained to the restitution order in *Dolan* similarly apply to the Rule 32.2(b) deadline for forfeiture.  The Fourth Circuit adopted this view a year after *Dolan* when, in *United States v. Martin*, it applied *Dolan*'s considerations to a previous version of Rule 32.2(b) and found its deadline to be a time-related directive.[17]  For several reasons, we agree with the reasoning in *Martin* and believe it applies with equal force to the current version of the rule.

First, Rule 32.2 "does not specify a consequence for noncompliance with its timing provisions."[18]  Second, the Federal Rules Advisory Committee's notes on the revised rule make clear that the deadline to enter the preliminary order is intended to give the parties time "to advise the court of omissions or errors in the order

---

[14] *Id.* at 614-15.

[15] *Id.* at 616.

[16] *Id.* at 608.

[17] 662 F.3d 301 (4th Cir. 2011).

[18] *Dolan*, 560 U.S. at 611 (internal quotation marks omitted).

before it becomes final" because there is limited opportunity to do so after judgment is finalized.[19]  At the same time, the comments make no mention of an interest in giving defendants certainty as to the amount to be forfeited before sentencing.  This focus on accuracy, not the defendant's repose, is consistent with the substantive purpose of forfeiture, which is to "deprive criminals of the fruits of their illegal acts and deter future crimes."[20]  Third, because forfeited funds frequently go to the victims of the crime, preventing forfeiture due to the missed deadline would tend to harm innocent people who are not responsible for the oversight.[21]  Fourth, consistent with examples cited in *Dolan*, interpreting the deadline rigidly here would disproportionately benefit defendants.  And, finally, as in *Dolan*, a defendant concerned about possible delays or mistakes can remind the district court of the preliminary order requirement any time before sentencing.

Our analysis is reinforced by the decisions of sister circuits that have also found the Rule 32.2(b) deadline to be non-jurisdictional.[22]  Thus, we conclude that Rule 32.2(b)(2)(B) is a time-related directive.  Accordingly, the district court's failure to enter a preliminary order in time does not render the forfeiture invalid.

McIntosh raises several counterarguments, none of which are persuasive.  He cites an Eleventh Circuit case for the proposition that "strict compliance with the letter of the law by those seeking forfeiture

---

[19] Fed. R. Crim. P. 32.2(b) advisory committee's note to 2009 amendment.

[20] *Martin*, 662 F.3d at 309.

[21] *Id.*

[22] *See United States v. Carman*, 933 F.3d 614, 617 (6th Cir. 2019); *United States v. Cereceres*, 771 F. App'x 803, 804 (9th Cir. 2019); *United States v. Farias*, 836 F.3d 1315, 1330 (11th Cir. 2016).

must be required."[23]  But Rule 32.2(b)(2)(B) governs the conduct of the district court, not the litigants.  The issue here is whether the district court had the authority to enter the order despite its failure to comply with the timing requirements, not whether the government should have been more diligent.  Even if the government bears some responsibility for the mistake, Rule 32.2(b)(2)(B)'s status as a time-related directive means that it is not a fatal one.

McIntosh also asserts that forfeiture is unlike restitution, which was at issue in *Dolan*, because restitution is intended to assist the victims of crimes.  It is true that forfeiture and restitution serve different purposes: restitution is for "remediating a loss," while forfeiture is for "disgorging a gain."[24]  But that distinction is less material here.  Forfeiture also serves other important purposes, and we see no reason why, for purposes of timing, restitution and forfeiture should be treated differently under these circumstances.

McIntosh next argues that he was prejudiced by the delay because his BMW lost value while the forfeiture issue was litigated.[25] But McIntosh knew that the district court would order forfeiture, and as the district court pointed out, he could have sought an interlocutory sale of the car if he had wished to preserve its value. Doing so would have been consistent with the structure of the rule, which permits the sale of property prior to sentencing but only with

---

[23] *United States v. $38,000.00 in U.S. Currency*, 816 F.2d 1538, 1547 (11th Cir. 1987).

[24] *United States v. Torres*, 703 F.3d 194, 196 (2d Cir. 2012).

[25] *See United States v. Qurashi*, 634 F.3d 699, 705 (2d Cir. 2011) (noting that *Dolan* permits us to take into account claimed prejudices resulting from delays).

the defendant's consent.[26]  McIntosh also argues that the government alone is responsible for preserving the value of seized assets, but for support he cites only to an inapposite customs statute.[27]  McIntosh has not demonstrated prejudice sufficient to void the forfeiture order.

McIntosh also points to the structure of Rule 32.2 to argue that the preliminary order deadline must be interpreted strictly.  Should the court forget to include the forfeiture order in the final judgment, Rule 32.2(b)(4)(B) permits the judgment to be corrected under Rule 36, which governs the correction of clerical errors.  From this provision, McIntosh infers that all the other requirements of the rule, which do not have related correction provisions, are strictly enforceable.  But Rule 32.2(b)(4)(B) simply makes clear that forgetting to incorporate the order in the final judgment is a clerical error and should be treated as such.  It sheds no light on the treatment of procedural errors.  Indeed, the statute at issue in *Dolan* similarly stated that a sentence containing an order of restitution can "subsequently be . . . corrected under Rule 35."[28]  This provision, however, did not transform the statute's other requirements into ironclad limits, and neither does reference to Rule 36 in Rule 32.2(b)(4)(B) do so here.

Finally, we reject McIntosh's claim that he should be credited for the value of the BMW at the time it was seized, not its eventual sale price.  He cites no authority directly supporting this point, instead relying on statutes that require the government or courts to preserve the value of seized assets.  The statutes he cites deal with

---

[26] Fed. R. Crim. P. 32.2(b)(4)(A); Fed. R. Crim. P. 32.2(b) advisory committee's note to 2000 amendment.

[27] 19 U.S.C. § 1612 (requiring the prompt sale of property seized under customs law).

[28] 18 U.S.C. § 3664(o)(1)(A).

protecting the interests of lienholders and others with claims on the property, not the individual subject to the forfeiture order.[29] Crediting defendants for property depreciation that occurred during litigation and which defendants could likely prevent by requesting a sale would, in most cases, undermine forfeiture's deterrent value and possibly shortchange victims.

## II

McIntosh also contests his convictions on Counts Twelve through Fourteen for possessing a firearm as a felon. At trial, McIntosh stipulated that he had been convicted of a crime punishable by a year or more in prison, but the stipulation did not state that he was aware of this fact when he possessed the firearms. The government, meanwhile, offered no evidence suggesting that McIntosh was aware of his felon status, but McIntosh did not object.

In *Rehaif v. United States*, the Supreme Court held that the relevant statutes required the government to show "that the defendant knew he possessed a firearm and also that he knew he had the relevant [felon] status when he possessed it."[30] On appeal, McIntosh argues that the district court committed plain error when it failed to instruct the jury about the knowledge element of these counts. Plain error arises when, among other requirements, "there [is] a reasonable probability that the error affected the outcome of the trial."[31]

---

[29] *See* 19 U.S.C. § 1612; Fed R. Civ. P., Supp. Rule G(7)(b); 18 U.S.C. § 981(g)(6).

[30] 139 S. Ct. 2191, 2194 (2019).

[31] *United States v. Nouri*, 711 F.3d 129, 139 (2d Cir. 2013) (quotation marks omitted).

McIntosh's argument is foreclosed by the recent Supreme Court decision *Greer v. United States*.[32]  In *Greer*, the Supreme Court held that, to establish plain error under *Rehaif*, a defendant must "make an adequate showing on appeal that he would have presented evidence in the district court that he did not in fact know he was a felon when he possessed firearms."[33]  McIntosh has offered no such evidence.  Consequently, we have "no basis to conclude that there is a 'reasonable probability' that the outcome would have been different absent the *Rehaif* error," and so we cannot find plain error.[34]

McIntosh argues that the district court's failure to instruct the jury on the point should, on its own, be enough to establish plain error.  But *Greer* has made clear that "*Rehaif* errors fit comfortably within the general rule that a constitutional error does not automatically require reversal of a conviction."[35]  McIntosh "must satisfy the ordinary plain-error test."[36]  He has not done so here, and so we affirm the district court on Counts Twelve through Fourteen.

## CONCLUSION

For the foregoing reasons, as to the issues discussed above, we **AFFIRM** the judgment of the district court.

---

[32] 141 S. Ct. 2090 (2021).

[33] *Id.* at 2097.

[34] *Id.*

[35] *Id.* at 2100 (quotation marks omitted).

[36] *Id.*